IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALLIANCE OF NONPROFITS FOR INSURANCE, RISK RETENTION GROUP | : : : : | CIVIL ACTION |
| v. | : : | No.: |
| LM GENERAL INSURANCE COMPANY | : : : | |

**COMPLAINT FOR DECLARATORY JUDGMENT
PURSUANT TO 28 USC §2201**

Plaintiff Alliance of Nonprofits for Insurance, Risk Retention Group (hereinafter "ANI") by and through its counsel Deasey, Mahoney & Valentini, Ltd., hereby files this Complaint for Declaratory Judgment and in support thereof avers as follows:

**I.    THE PARTIES**

1.    ANI is a Vermont domiciled risk retention group which is formed under and is regulated pursuant to Federal Liability Risk Retention Act 15 USC § 3901 – 3906 (hereinafter "Act"), with its principal place of business located at 300 Panetta Avenue, Santa Cruz, California.

2.    Pursuant to the Act, risk retention groups are chartered under a specific state's law and are permitted to operate in all fifty states.

3.    Defendant LM General Insurance Company (hereinafter "Liberty"), is a stock insurance company, wholly owned by Liberty Mutual Insurance Company, with its principal place of business located in Boston, Massachusetts.

**II.     JURISIDICTION AND VENUE**

4. Jurisdiction is founded upon diversity of citizenship under 28 USC §1332, as the amount in controversy is in excess of $75,000.00, exclusive of interest and costs.

5. Jurisdiction is also founded upon the provisions of 28 USC §2201 for the entry of a Declaratory Judgment.

6. Venue in this district is proper pursuant to 28 USC §1391(b)(2).

7. Venue in this district is proper pursuant to 28 USC §1391(b)(3).

**III.    FACTS OF UNDERLYING CLAIM AND COVERAGE**

8. This Declaratory Judgment action arises out of a dispute over the priority of insurance coverage available to Gertrude Montgomery for an automobile accident that occurred on or about August 11, 2021.

9. On that date, Ms. Montgomery was driving her own vehicle, a 2017 Dodge Journey in Fairless Hills, Pennsylvania.

10. On information and belief, on August 11, 2021, Ms. Montgomery was operating her own vehicle as an employee of Access Services, Inc. (hereinafter "Access"), or as a volunteer on behalf of Access.

11. On information and belief, on August 11, 2021 at approximately 11:00 a.m., Ms. Montgomery was operating her vehicle in the area of 499 S. Oxford Valley Rd., Fairless Hills, PA, when she lost control of her vehicle.

12. Ms. Montgomery was driving John Rhoades, an individual receiving services from Access.

13. The area identified as 499 S. Oxford Valley Road is the parking lot of a Wells Fargo Bank.

14. According to the police report attached hereto as Exhibit "A" Ms. Montgomery may have lost consciousness while driving through the parking lot.

15. It is undisputed that Ms. Montgomery's vehicle crashed into the side of the Wells Fargo Bank.

16. According to the police report, one Patricia Wetzel, an employee of Wells Fargo Bank, was injured by the accident.

17. Ms. Wetzel was transported from the scene of the accident by EMS.

18. Since that time, Ms. Wetzel has submitted a claim seeking compensation for her injuries.

19. On the date of the accident, Ms. Montgomery was insured under automobile policy number AOS-281-248348-70 0 8, issued by Liberty for the period October 5, 2020 to October 5, 2021 ("Liberty Policy").  A copy of the Liberty Policy is attached hereto as Exhibit "B".

20. The insuring agreement included in the Liberty Policy provides as follows:

> We will pay damages for "bodily injury" or "property damage" for which any "insured" becomes legally responsible because of an auto accident.  We will settle or defend, as we consider appropriate, any claim or suit asking for these damages.  In addition to our limit of liability, we will all defense costs we incur.  Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted.  We have no duty to defend any suit or settle any claim for "bodily injury" or "property damage" no covered under this policy.

Exhibit "B" at pg. 3 of 17.

21. Under the Liberty Policy, an "insured" is "You or any 'family member' for the ownership, maintenance or use of any auto or 'trailer'."  Id.

22. There is only one vehicle identified as an insured vehicle in the Declarations to the Liberty Policy, a 2017 Dodge Journey.

3

23. The VIN identified in the Declarations of the Liberty Policy is the same as the VIN identified in the police report.

24. According to the Definitions section of the Liberty Policy, the following relevant definitions apply:

    A. Throughout this policy, "you" and "your" refer to:

        1. The "named insured" shown in the Declarations;

    D. "Bodily injury" means bodily harm, sickness or diseases, including death that results.

    K. "Property damage" means physical injury to, destruction of or loss of use of tangible property.

    L. "Serious injury" means an injury resulting in death, serious impairment of bodily function or permanent serious disfigurement.

Exhibit "B", pg. 1 and 2 of 17.

25. Under Limit of Liability contained in the Liberty Policy, the limit of liability is the limit shown in the Declarations. The Limit of Liability is $100,000 Each Person.

26. Under the Other Insurance provision, the Liberty Policy provides:

If there is other applicable liability insurance available any insurance we provide shall be excess over any other applicable liability insurance. If more than one policy applies on an excess basis, we will bear our proportionate share with other collectible liability insurance. However, any insurance we provide for a temporary substitute vehicle provided by a motor vehicle dealer when "your covered auto" is being transported, serviced, repaired or inspected by the motor vehicle dealer, shall be primary.

Exhibit "B" pg. 5 of 17.

27. On the date of the accident, Access was insured under Commercial Lines Policy number 2020-60411 for the period August 15, 2020 to August 15, 2021 ("Access Policy"), which was issued by ANI. A copy of the Access Policy is attached hereto as Exhibit "C".

28. The Access Policy is a multi-lines policy which includes a Commercial Auto Liability Coverage Part. See Exhibit "C".

29. Under the Business Auto Coverage Part, Schedule of Coverages and Covered Autos, ANI provides $1,000,000 in combined single limit liability coverage for "any auto."

30. The Access Policy also includes a listing of the Access owned vehicles covered by the policy.

31. The 2017 Dodge Journey which is owned by Ms. Montgomery is not one of the vehicles listed as an insured vehicle under the Access Policy.

32. Under SECTION II – COVERED AUTOS LIABILITY COVERAGE, A. Coverage, ANI will pay:

> all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

Exhibit "C" at pg. 2 of 12.

33. According to the Access Policy, Who Is An Insured is:

   a. You for any covered "auto".

   b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

      (1) The owner or any else from whom you hire or borrow a covered "auto".

      This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

      (2) Your "employee" if the covered "auto" is owned by the "employee" or a member of his or her household.

34. Under the Access Policy, the term "you" refers to the Named Insured shown in the Declarations. The Declarations the Named Insured is Access Services, Inc.

35. Under SECTION IV – BUSINESS AUTO CONDITIONS, 5. Other Insurance the following provisions apply:

    a.    For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance …

    d.    When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

36.    SECTION V – DEFINITIONS as contained in the Access Policy includes the following relevant definitions:

    A.    "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

    C.    "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from these.

    F.    "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

    G.    "Insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

    I.    "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

    J.    "Loss" means direct and accidental loss or damage.

    O.    "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

37.    The Access Policy includes an EMPLOYEES AS INSUREDS endorsement that contains the following:

> The following is added to the Section II – Covered Autos Liability Coverage, Paragraph A.1. Who Is An Insured provision:

> Any "employee" of yours is an "insured" while using a covered "auto" you don't own, hire or borrow in your business or your personal affairs.

38. The Access Policy also includes a SOCIAL SERVICE AGENCIES – VOLUNTEERS AS INSUREDS, which provides:

> The following is added to the Who Is An Insured provision under Covered Autos Liability Coverage:
>
> Anyone volunteering services to you is an "insured" while using a covered "auto" you don't own, hire or borrow to transport you clients or other persons in activities necessary to your business. Anyone else who furnishes that "auto" is also an "insured".

## COUNT I – DECLARATORY JUDGMENT

39. ANI incorporates all of its foregoing paragraphs as if set forth at length herein.

40. According to the Liberty Policy, Gertrude Montgomery is a named insured.

41. According to the Liberty Policy, Gertrude Montgomery is the owner of the 2017 Dodge Journey that was involved in the underlying accident.

42. According to the police report, the VIN of the vehicle involved in the accident is the same as the VIN identified in the Liberty Policy.

43. Ms. Montgomery's 2017 Dodge Journey is not identified as an owned vehicle in the Access Policy.

44. Under the Liberty Policy, Liberty agreed to pay "damages for 'bodily injury' or 'property damage' for which any 'insured' becomes legally responsible because of an auto accident."

45. An "insured" under the Liberty Policy is a "you," which includes the "named insured".

46. Gertrude Montgomery is a "named insured" on the Liberty Policy.

47. Patricia Wetzel was injured in an auto accident.

7

48. Under the Access Policy, Access owned "autos" are specifically identified in the Declarations.

49. Pursuant to the Access Policy, an "insured" is anyone using "with your permission a covered 'auto' you own, hire or borrow" except an "'employee' if the covered 'auto' is owned by the 'employee'."

50. There is no dispute that the vehicle Ms. Montgomery was driving on August 11, 2019 was not owned by Access.

51. Under the terms of the Access Policy, if Ms. Montgomery was an "employee" of Access, she does not qualify as an "insured".

52. Under the terms of the Access Policy, if Ms. Montgomery was a volunteer assisting Access and driving a non-owned "auto", she does not qualify as an "insured".

53. However, the EMPLOYEES AS INSUREDS endorsement adds back coverage for an "employee" using a covered "auto" Access does not own, hire or borrow.

54. Under the SOCIAL SERVICE AGENCIES – VOLUNTEERS AS INSUREDS endorsement, Ms. Montgomery qualifies as an "insured" if she is using a covered "auto" that Access does not own, hire or borrow "to transport you clients or other persons in activities necessary to your business."

55. Thus, Ms. Montgomery may be an insured on the Access Policy.

56. Despite being notified of Patricia Wetzel's claim, Liberty disputes that its coverage is primary.

57. The Other Insurance provision of the Liberty Policy provides:

> If there is other applicable liability insurance available any insurance we provide shall be excess over any other applicable liability insurance.

58. The word "applicable" is not defined in the Liberty Policy.

8

59. Under Pennsylvania law a court can look to outside sources to assist in defining terms in an insurance policy. <u>Madison Constr. Co. v. Harleysville Mut. Ins. Co.</u>, 735 A.2d 100, 108 (Pa. 1999).

60. According to Black's Law Dictionary, Sixth Edition, the word "applicable" means "[f]it, suitable, pertinent, related to, or appropriate; capable of being applied."

61. According to Merriam-Webster on-line, "applicable" means "capable or suitable for being applied." https://www.merriam-webster.com/dictionary/applicable

62. Under the Other Insurance provision of the Access Policy, the Access Policy is only primary for covered "autos" owned by Access.

63. For any covered "auto" that Access doesn't own, the Access Policy is excess of other "collectible" insurance.

64. Liberty does not, and has not, claimed that its insurance is not collectible.

65. Moreover, despite the clear language contained in the Access Policy, the Access Policy is not available insurance because the vehicle involved in the accident was not owned by Access.

66. Rather, despite the clear language contained in the Liberty Policy, Liberty claims that the coverage under the Liberty Policy is excess to the coverage provided under the Access Policy.

**WHEREFORE**, Alliance of Nonprofits for Insurance, Risk Retention Group respectfully requests that this Honorable Court declare that Defendant LM General Insurance Company's policy apply on a primary basis.

## COUNT II – ALTERNATIVE DECLARATORY JUDGMENT

67. ANI incorporates all of its foregoing paragraphs as if set forth at length herein.

68. In the alternative, Liberty claims that both the Liberty Policy and the Access Policy apply on an excess basis, making coverage mutually repugnant.

69. Nevertheless, Liberty has asserted, contrary to prevailing Pennsylvania law, that where the competing policies share in the defense and indemnity of Gertrude Montgomery in accordance with the respective limits of coverage.

70. The application of insurance coverage where the "Other Insurance" provisions of potentially competing insurance policies was answered by Pennsylvania's Supreme Court in American Cas. Co. of Reading, Pa. v. PHICO Ins. Co., 702 A.2d 1050 (Pa. 1997).

71. There, Pennsylvania's Supreme Court held that "the appropriate common law rule for apportioning the loss between insurers where the policies at issue contain irreconcilable and mutually repugnant 'other insurance' clauses is equal shares. Id., at 1051.

72. "Where two policies each purport to be excess over the other, such clauses are mutually repugnant; both must be disregarded and the insurers must share in the loss … each insurer must contribute equally towards any settlement, judgment or expenses;" Progressive Northern Ins. Co. v. Universal Underwriters Ins. Co., 898 A.2d 1116 (Pa. Super. 2006).

73. Under Pennsylvania law, if the "Other Insurance" provision of the Liberty Policy and the "Other Insurance" provision of the Access Policy are deemed mutually repugnant the parties share equally in the claim asserted by Ms. Wetzel against Ms. Montgomery.

**WHEREFORE**, Alliance of Nonprofits for Insurance, Risk Retention Group respectfully requests that this Honorable Court declare that Plaintiff Alliance of Nonprofits for Insurance,

Risk Retention Group's policy and Defendant LM General Insurance Company's policy are mutually repugnant, and both share equally in the underlying claim.

                    DEASEY, MAHONEY & VALENTINI, LTD.

BY: _____
      FRANCIS J. DEASEY, ESQUIRE
      WARD A. RIVERS, ESQUIRE
      Attorneys for Plaintiff
      Alliance of Nonprofits for Insurance,
      Risk Retention Group

Date: January 18, 2023